The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and get their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. Welcome to the Fourth Circuit and we are ready to hear argument in our first case, Taja Investments v. Peerless. Mr. Brown. Good morning, Your Honors. Tom Brown and I represent Taja Investments, Taja Rehabilitation. With me here is Eric Lawson from my firm, Silver and Brown. Let me get directly into this, Your Honors. This is a case in which my clients owned a piece of property at 117 New York Avenue. They were doing renovations on that property. They had purchased a builder's risk policy to cover risk of loss during the rehabilitation. They were excavating an existing crawl space at the shallow end, four to five feet below the earth's surface, and at the deep end, nine feet below the living area and below the earth's surface. My clients had done this on eight times before. That's what the affidavit is on page 1307 of the joint appendix and had never had any problems. In this case, though, Your Honor, what had happened was on the day of the loss, they had done the excavation. They had gone home. While nobody was there, a collapse occurred. Now, since this is a case under an insurance policy, obviously the insurance policy is the law of the case between the parties. In this case, Your Honor, there are two exclusions and only two exclusions which are relevant. That's in the joint appendix. There are requests for admissions on that. The first is the earth movement exclusion, and that's one of the broadest exclusions in the policy. And the second, Your Honor, is the workmanship exclusion. I caution, Your Honors, that the language in this policy is different, never been construed by this court or any other court that I can tell. It is very unique. And in this case, Your Honor, the exclusions under the policy are, this is an all-risk policy that covers all risk of loss unless that loss is excluded. Obviously, all of the problems or all of the arguments come, what's the reach of the exclusion? The B1 exclusions or the 1 exclusions are the broadest. There's anti-concurrent causation language, and the loss is excluded if it's directly or indirectly caused. The second level of exclusions cover only direct damage, and there's no anti-concurrent causation language. The Park Center case authored by Judge Bryan gives you a very good primer on what that means. Bottom line is if we have two perils, one of which is covered, one of which is excluded, you have coverage if it's a B2 exclusion but not a Section 1 exclusion. Well, the district court found that both the exclusions applied. Why don't you tell us why you think the district court was incorrect? Well, let's go to the very first exclusion, Your Honor. As I said, we need to look at the policy itself. Earth movement, which is the first exclusion, excludes earth movement. But earth movement is a defined term. It doesn't mean all earth movement. In fact, if we go to the Joint Appendix 264 and we go to the definition of earth movement, earth movement in parentheses means any movement or vibration of the earth's surface. That's very specific. Now, Your Honor, there is no dispute in this case there was no movement at the earth's surface, the 30B6 deposition of the peerless. Why do you say that? Because, Your Honor, all of the testimony in this case was there was no movement at the earth's surface. The deposition of Jonathan Lawley, who was the 30B6. So what is the earth's surface? It is the surface of the earth, Your Honor. That is, it is. It's not quite so easy to explain. So the area underneath the house that collapsed. Correct. Was that for the surface of the earth? It was not, Your Honor. So what was? If you go outside and you walk along the perimeter of the house, that's the surface of the earth. Your Honor, if we come to the basement. I'm sorry. Go ahead. So the basement of the house, there is no surface of the earth there. There is no surface of the earth below the surface, in the basement of the house, in the basement of this house, which was nine feet below. So let's say we walk across a field and we're walking on the surface of the earth. Correct, Your Honor. And we come upon a rock. We move the rock. We step down in the depression that the rock occupied. Are we on the surface of the earth at that point? Well, Your Honor, I don't think. In your case, once the rock has moved, maybe you would be on the surface of the earth in that exception or that example. So what's the difference between that and the basement? Well, because, Your Honor, the basement was all completely dug out, number one. Number two, the insurance company even agreed there was no movement at the surface of the earth. The deposition of Jonathan Lawley, he was asked that precise question, and he said he was not aware of any movement of the soil at the surface of the earth. And, Your Honor, I have a problem with my appendix. I had a miss site. That's at 626 of the Joint Appendix, Volume 2. But, Your Honor, we look at the policy itself. If we go to flood, that gives us a little bit more information of what this means. In the flood definition, one of the things they say is flood means surface water. When we go to the exclusions, the insurance company said, okay, we excluded flood, but they wanted to also exclude water below the surface of the ground. And, in fact, that's exactly what they did. Excuse me, Mr. Brown, it seems to me that perhaps your argument is unduly complicating this because if the workmanship exclusion applies, none of this matters, does it? Well, Your Honor, we've got to go to both of them. Okay. If the workmanship exclusion applies, then none of this matters. If the workmanship exclusion applies and we don't reestablish cover under the resulting loss, then yes, Your Honor, that's true. But if there's a resulting loss. Okay, but let's do one at a time then. Why doesn't the workmanship exclusion? Well, to begin with, Your Honor, once again, we now need to go to the workmanship exclusion and read that language. And I would caution, once again, the Court, language in the ensuing loss provision or the resulting loss provision is different than it is in TRAFCO or any of the other cases that have been addressed by the Virginia Supreme Court or this Court. This one, Your Honor, says we don't pay for damage if covered by one of the exclusions, but if a loss by a covered peril. I'm reading from the workmanship exclusion itself, Your Honor. The exclusion is found at page 272 of the joint appendix. And it's the third level exclusion, so it's under 3, and then it would be 3P, Your Honor. The resulting loss damage is what we're looking at here. It says, but if a loss by a covered peril results, we do not pay. Are you conceding that under your theory of the case, in the first instance, the workmanship exclusion applies? Well, Your Honor, I think for purposes of this argument, we would concede that the workmanship exclusion itself applies, but the exception to the exclusion reestablishes coverage. And, Your Honor, that is, it says, but if loss by a covered peril results. So let's assume what the peerless has argued is that, remember, the workmanship, Your Honor, it excludes all workmanship, any loss related to workmanship. Quite frankly, if we didn't have the resulting loss exception, this exclusion would exclude everything under this policy. That is, the policy, it's a builder's risk policy. What it excludes is loss or damage caused by any act, error, omission, negligent or not. So it would exclude everything. So the play here, Your Honor, or the meat of this exclusion, is really in the exception to the exclusion, the resulting peril. In this language, Your Honor, is very unique to this policy. Most policies say if there's an ensuing loss. This one doesn't talk about an ensuing loss. It talks about a resulting peril. Most insurance policies exclude the peril of collapse. This one does not. Most insurance policies would exclude earth movement below the surface of the earth. We argue this one does not, only at the earth's surface. Both of those perils, Your Honor, are covered perils. They're not accepted or excluded by this policy. Therefore, they're covered by this policy. Your Honor, this would be very similar to the Trinity case, which is cited in our briefs, where the court said, look, if all workmanship was excluded, this wouldn't be an all-risk policy. It would be a no-risk policy. In this case, the workmanship exclusion is, that is, coverage is reestablished. Had we gone to the insurance company and said, look, we have a precarious building. We have an underpendent, and we need money to shore and sheet this building, to shore it up. Not covered, Your Honor. Very similar to what was argued in the Vision 1 case. However, once the collapse occurs, and remember that collapse doesn't always occur. That's a collapse that is fortuitous. My client's done this eight times before. It's never happened before. This time there's a collapse. We don't know exactly what caused that collapse. The deposition of the expert for Peerless, he was asked that precise question. Work was done. The building was standing. The house was standing. What actually caused the collapse? He said, I don't have an answer for you. He doesn't know. Didn't Mr. Kate say it was faulty work sequence performed during excavation and underpinning? That's correct, Your Honor, but he said he didn't know what actually caused the actual collapse to occur. Remember, under the work sequence, that is, the excavation was all done, workers all got up and they left. Right. And they left. They went home. The building is standing when they leave. That's Mr. Wilson's testimony and Mr. Watson's testimony. Subsequently, several hours later, a collapse occurs. What actually triggered the collapse, we don't know. Well, isn't it fair to say, following on Judge Keenan's question, that but for the failure of your client's employees to underpin the building, it would not have collapsed? Well, Your Honor, I think that's probably a fair assumption, Your Honor, but the question is, has there been a resulting peril from the lack of workmanship, from the over-excavation, from the lack of underpinning? Well, under your theory of application of the insurance policy, when would the workmanship exclusion operate as a bar to recovery? It operates as a bar to recovery. For example, in this case, it operates as a bar to recovery of the cost for underpinning and the cost to do the excavation. One of the cases we cited, and this is a typical case where it comes up, workman puts a valve in a plumbing system in a building. Valve is defective. Valve breaks. We have water damage. The cost to repair the plumbing system is not covered. The workmanship itself is not covered. The resulting peril here, the water damage, was covered. How do you square that with the language that says, we do not pay for loss caused by a workmanship defect, not just we don't pay to replace? I mean, there's causal language in here. Well, I understand, Your Honor, and there's causal language, but remember this is in a third-level exclusion. So we go to the Park Center case and we say, look, we have a loss, and the loss is caused by two things. In this case, lack of underpinning and collapse. These are the two perils that we have. One's covered, the collapse, because it's not excluded. One's not covered, the workmanship. So the direct workmanship cost itself, that is the cost to underpin. How is that different than if you've got a workman on site who just, like, swings a hammer and knocks out a window? Are you going to come in and say, we've got two different things. We've got the swinging of the hammer, and then we've got the broken window. I mean, I don't understand how these two things split into two separate incidents. Well, you have to have a resulting peril. That's what the policy says. It's not an ensuing loss like we saw in Travco. And there's a dissertation by the Supreme Court in that case, because it went on upon a referral question, in which the case said, well, there has to be a result. And remember here, the ensuing peril has to result from the workmanship. There has to be a causal link between the two. And in this case there was. The ensuing loss, Your Honor, is the collapse. There's not always a collapse. However, if we had called the insurance company and said, we have a building that's in peril. We're afraid it's going to collapse. We want you to pay to sheet and shore this building, put shoring up to temporarily support this building. That would not be covered, because the only thing in play there is the excluded workmanship itself. But the resulting peril, that is, that's what's covered, the covered peril results. And remember, all perils are covered under this policy, unless excluded. The covered peril, Your Honor, I see my time is up. Is the answer to your question? Yes. Thank you. You've got some time left on rebuttal. Mr. Lifson. Good morning. May it please the Court, my name is Roman Lifson. I'm here with my partner, Ford Stevens, with the Christian and Barton Law Firm, on behalf of Peerless Insurance Company, the FLE. As Judge Keenan noted originally, there are two exclusions at play here, and if either one applies, summary judgment for Peerless is proper, and here the district court ruled that both exclusions applied, and our position is that the district court was correct on both counts. I think we're now past the question of whether the workmanship exclusion applies, and I think I heard Mr. Brown correctly admit that, yes, it does apply because workmanship was at issue. So the real question here is, does the ensuing loss clause apply? Before we get to that, I think Mr. Brown mentioned that the policy language here is unique. I don't think there's anything unique about it, but one of the things that is interesting is that the workmanship exclusion is particularly broad. Most workmanship exclusions talk about excluding only negligent workmanship. Here, the policy specifically excludes workmanship, whether it's negligent or not, which I think the implication is that the intention is for it to be even broader than it normally is. So the ensuing loss clause, it's an exception. It would restore coverage only if it applies, and the overwhelming weight of authority is that the ensuing loss clause applies only when a separate and independent cause results in a covered loss. Then there has to be two events. That's right. There has to be a separate, second, independent event. In this case, if the collapse had caused a fire somehow, had knocked over a heater and caused a fire, you would say that comes under the ensuing loss clause. That's right. As long as the second event is covered, if it's an independent cause, it would, in fact, be covered. However, to construe it otherwise, and this is what the vast majority of the courts have felt, to construe it otherwise the way Taja wants it construed, it makes the workmanship exclusion itself meaningless, because Taja's position is, well, as soon as we have this peril that occurs, as long as it's not excluded somewhere else in the policy, then it's covered. What that argument amounts to is that the peerless now needs two exclusions to cover it. We need the workmanship exclusion to trigger it in the first place, but then we have to find yet another exclusion, and there's simply no support for that position. Can I ask you a question? Is your understanding that there's nothing from the Virginia courts directly on point here and that you're relying more on just the general weight of authority? The closest case is the Trafco case of the Eastern District of Virginia, which this court affirmed, which specifically required there to be a separate cause. Right, but is there anything from the Virginia state courts? There's not. And we cited a lot of cases, which we don't have time to get into, but one, just as one example, and I think this hits it very, very directly. Well, let me ask you in the course of that example. Your view of the case, as I understand it, is that in order for this resulting peril to apply, there would have to be a break in the causal chain between the workmanship event and whatever happened after that. That's right, because what's not covered is what is caused by the workmanship. And if there's some additional cause that causes yet another peril, which is not otherwise excluded in policy, then the ensuing loss clause would apply to cover it. The Performing Arts case, which is the 2015 case from the Western District of Missouri, this is what the court held, and it says, quote, if a defectively designed building collapses, one does not characterize the effect of gravitational forces as a distinct and separate event, and the cost of replacing the collapsed building is not an ensuing loss. And that's exactly what we have here. The failure to underpin is not a covered peril. That's just a failure to underpin. That's the failure to perform workmanship properly, and what directly results from that is the collapse of the building, which is what's excluded under the policy. I just want to be really clear. So to go back to my example where the same facts as in this case, but the collapse knocks over a space heater and starts a fire, and assuming a fire is not otherwise excluded, the workmanship failure would still be a but-for cause, but it would no longer be a proximate cause. There's too much attenuation. That's right. There is a second independent separate cause. Exactly. And the Virginia law is quite clear that the courts must give meaning to every term of the policy, and as the district court correctly found, Taj's interpretation would simply make the workmanship exclusion itself meaningless, which is contrary to Virginia law. One other way to look at it is let's consider what would happen to the other exclusions in the same section. The workmanship exclusion is subparagraph B. Subparagraph C is the exclusion that says we do not pay for loss caused by arcing or by electrical currents other than light. So, for example, let's say we have a welder who's welding. There's an arc that caused a fire. Under Taj's interpretation, the ensuing loss clause would apply because fire is not otherwise excluded. So, again, we would have a complete evisceration of that exclusion, which is contrary to what the policy requires. Mr. Lippman, let me ask you a question I probably should ask Mr. Brown to and ask him to address on rebuttal. What about the choice of law issue? Is there an issue here in this case? It's really not clear. Your Honor, there's not an issue for a couple reasons. First of all, in Taj's complaint, the allegation is that the policy was delivered to the insured in Virginia, which would make Virginia law apply. That's never been amended. It's never been retracted. Also, I think Taj had noted in one of its briefs that whether D.C. law or Virginia law applies, the result is the same because there's no substantial difference in the applicable law. So I think where we are is the application of Virginia law as a result of the plaintiff's own allegation in the complaint. Yes, sir. There's also a suggestion in Taj's brief that the ensuing loss clause is ambiguous. And several of the cases that we've cited specifically address that question. The Holland v. Brough case in which the court held that the ensuing loss clause provisions in the policy's exclusions do not make the policy ambiguous but instead provide coverage for loss that is separate and extraneous from the original damage. And the same decision was reached in the Arnold v. Cincinnati case. I don't think I need to belabor the point of the question of whether there's proof of what caused the loss. I think the court's noted that there's no question that the failure to underpin caused the loss. And as the district court noted, Taj adopted our expert, Mr. Cate's, report. In that report, he specifically, in two separate places, concluded that the failure to underpin caused the loss. That's at page 1337 of the joint appendix. On the earth movement exclusion, Your Honor, that is a very straightforward point, and that is Taj's entire argument rests on conflating and substituting the term below grade for below the earth surface. There is no dispute that the top layer of the earth movement, that the earth that was directly underneath the wall that collapsed, is what moved. There's no dispute about that. And I very much disagree with Mr. Brown's claim that Peerless at any point admitted that there's no movement at the surface of the earth. If you look at the deposition testimony, there's a very direct attempt to substitute the term below grade for below the surface of the earth. And as the district court properly used the dictionary definitions of what surface means, it means the uppermost layer of something. And here, the uppermost layer didn't happen. Can I ask you a different question about this exemption? The district court opened by addressing a different issue and saying he does not, the district court did not believe that this exclusion was limited to earth movements or volcanic eruption, which sort of speaks of a more widespread natural phenomenon. And even though it's defined mostly with examples of widespread natural disasters, I'm not sure whether that issue is being raised in this appeal. But what's your response to the idea that if you just look at the examples, this seems to be about something different than a one-off construction problem? Your Honor, it was raised only for the first time in Taj's brief in this court. The response to that is twofold. The exclusion includes both natural occurring events and man-made occurring events, such as mines. It's only the mines. It is. And the district court cited a previous case, the Tasty Treats case, with the same type of exclusion, which included both man-made and natural occurring events and concluded that that includes both. Two critical points here. One is the exclusion, the earth movement exclusion includes the clause including but not limited to, which the district court found is important because it clearly indicates an intent to consider a wide variety of things. There's also a new case which was decided just in June of this year by the Michigan Court of Appeals. It's the Homeowners Insurance Company v. Andriachi. And the case citation is 2017, Michigan Appellate Lexus 917, a virtually identical earth movement exclusion. And what the court found significant there is the use of the term any. The exclusion is any. Any earth movement. And here's what the court held is that the word any is not defined in the insurance policy, but it's commonly understood to be all-encompassing, meaning every or all. Thus, any earth movement means every or all movement of the earth without restriction or distinction as to the type, i.e., natural or man-made. So that is the recent case very much on point. I hope I addressed the court's question. So there's no basis to substitute the term below grade or below the surface of the earth. One of the questions that I think Taja poses sort of rhetorically is, well, under the district court's interpretation, the movement under the surface of the earth would be excluded. Well, that's certainly true as long as it's accompanied by also movement at the surface of the earth. So, for example, if we have movement 10 feet below the earth's surface or 50 feet below the earth's surface, that would be also excluded as long as it also includes movement at the surface of the earth. So there's no requirement that the movement be only in the top inch or foot or 10 feet. The only requirement is that there be movement at the top of the uppermost layer. How far down it goes doesn't really matter. All that matters is that the movement occur at the surface of the earth. There's a panoply of cases cited in our brief about the ensuing loss clause, which I'm sure the court has, and I don't need to belabor those, but I think the authority is quite clear. I will note that the only case that Taja relies on is the Washington Appellate Court case in the Vision 1 case. The history of that case is interesting because on the very same day that that case was decided, the Washington Supreme Court decided another case, which went completely the other direction, and the justice who wrote the majority opinion in Vision 1 was the dissenting judge in the other case. In addition, there was a different policy involved here. So the strongest weight of the overwhelming weight of the authority is on the interpretation that we suggest. Unless the court has other questions, that's my argument. Thank you very much. Thank you.  Thank you, Your Honors. Let me start with the question of whether there was testimony from his client as to whether there was movement or not movement at the earth's surface. 626 of the Joint Appendix question was, okay, you're not aware of any movement of the soil at the surface of the earth. Correct. Answer, it happened under the wall. Correct. There is no question there wasn't any movement at the earth's surface. The argument is, well, it's the earth, the upper layer. The question is, well, how far down does that go? That just builds ambiguity directly into that. Let's say there's movement two feet below the surface but not at the surface. Is that covered if it's just the upper layer, 10 feet, 12 feet, 100 feet? The insurance company hasn't defined what the upper layer is. And, in fact, that's not what it says. It says the earth's surface. This is the reason why. I just want to make sure I understand your position. So your position is that if it happens in a basement that is below grade, that's not the movement of the earth's surface, even if it's caused by, say, an earthquake. An earthquake cracks open my basement but nothing above the basement. That's not covered? Well, Your Honor, for example, let's say there is a void in the soil beside your basement or as in the Allied case. I know what an earthquake looks like from the movies. Let's just go with an earthquake. So an earthquake splits open my basement floor but it doesn't reach the grade level part of the house. Well, Your Honor, there you have a vibration at the earth's surface. So, I mean, if there's no vibration at the earth's surface, if it's completely underneath the surface of the earth, then, yes, it would not be excluded under this exclusion. But if there's no movement at the earth's surface, the case that we have is the Allied case, Your Honor, where there's a defectively designed wall, a retaining wall. What happens if the earthquake is so centrally located it's only underneath her basement floor? But there's no movement at the surface of the earth? Nothing that can be proved or measured. Well, let's just say there's no movement. It's just that there's all below the surface of the earth. There's no movement on top of the ground around the house. Right. And then, Your Honor, the exclusion would not apply in this case. Even though it's an earthquake.  Well, Your Honor, it says earth movement. It's not earthquake. But some policies do exclude earthquakes. Isn't earthquake listed as an example now? Well, it's listed as an example, Your Honor, for the exact reason that you said. I mean, if there's a general overall earthquake that vibrates the whole area. But, Your Honor, in this case, the exclusion itself says, and I think we have to go to the exclusion that was written by Peerless in this case, and they have to make it clear. Earth movement is what's excluded. And earth movement means movement or vibration of the earth's surface. That language you won't find in any other policy. I mean, I will grant you most policies exclude earthquakes and earth movement, and they define earth movement as any movement of the earth. Expansion, contraction, things of that nature. This one doesn't do that. It's very, very particular. And it's also very particular language on the workmanship exclusion as well. Before you leave earth movement, can I just ask, are you advancing an argument here that the earth movement exclusion doesn't apply to man-made as opposed to natural? Yes, Your Honor. That was part of what was part of the briefs. And, Your Honor, I think the selective insurance case says in Virginia, when there's a laundry list of things that are not man-made, it does not apply. You argued that in the district court? We argued that and briefed in the district court, Your Honor. At what point in the district court did you? I'd have to go back. I think it's in my original summary judgment brief that was heard before Judge Lee. We cited the selective way insurance case, Your Honor, and that's what that case is cited for is the pseudium generis principle, I believe. I'm not sure how to pronounce it. I'm not good on Latin, Your Honor. I will tell you this. On the fortuity, the workmanship exclusion, one of the cases cited by the insurance company was Swire v. Zurich Insurance. And in Swire, they talk about the case Laquila. It was a rehash of a case called Laquila. And what happened in Laquila was very similar to what happened in Vision 1. They were pouring floors of a building. They got to the fifth floor, they poured it. Then they got to the sixth and they poured it, but they went back. The fifth floor didn't have the right strength. They made a claim with their insurance company and said, we need to tear out the fifth floor of this building and put in a new fifth floor. And the court said no. The defective workmanship was defectively installing that floor. You don't get the cost of that. But this is what they said. Similarly, had the fifth floor slab collapsed and damaged the machinery, plumbing, electrical fixtures, and even neighboring property, such loss is wholly separate from the defective materials in that case themselves would qualify as non-excluded ensuing losses. And, Your Honor, that's exactly the case that we have here. The argument on defective workmanship or bad workmanship is one, over-excavation, and two, they didn't underpin. Those items are excluded from the claim. We can't say, look, you got to pay for the underpinning. You got to pay to shore it up so we can underpin. But when a resulting collapse occurs, and remember my client's done this eight times before, had no collapse. In this case, for some reason, a collapse occurred. That collapse is a resulting peril. And I will tell you, Your Honors, if you look at the Trafco case, that's the language that you typically see. In that case, it's- Let me just ask you a quick question. You've said many times that usually when these workers fail to excavate, they get lucky and there's no collapse. Does any part of your argument depend on that? Does it matter? What if every time you fail to excavate- Well, Your Honor, because it's a fortuitous loss. This is a builder's risk policy. This case is different if this is the first time they fail to excavate and it collapses. At that point, you think the ensuing loss clause would not apply. Well, no, I don't- Well, you know, Your Honor, it's the other way around. The fact is that the actual collapse itself is a separate peril. Now, remember, he's argued that that peril has to be an independent event, but that's not what the policy says. The policy actually requires it to result from. That is, it says if a covered peril results. So, Your Honor, I guess in this case the issue is, is the collapse a covered peril that resulted from the lack of underpinning? Yeah, I get that. I guess I was just asking whether it is part of your argument, whether you were trying to make an argument that because this doesn't usually happen, this isn't a usual or customary result of a failure to underpin, it's more of a freakish thing. Well, Your Honor, I guess- Refusing the fact that they've done this before without a bad- Right, Your Honor, and I guess the point there, Your Honor, is that the collapse is not the same as the lack of underpinning. It's a separate peril. Thank you, Your Honor. I see my time is up. Thank you very much, Mr. Brown. We'll come down and greet counsel, and then we're going to move on to our next case.
judges: G. Steven Agee, Barbara Milano Keenan, Pamela A. Harris